Okay, this is a case of People v. Marcus Dordies, 1-18-2621. You have before you Justice Cynthia Cobbs, Justice Nate House, and myself, Justice James Fitzgerald Smith. Our normal procedure, as long as you don't go off on tangents, it's to let the appellant argue their case for 10 to 15 minutes, and then we will ask questions. And then the same as for the appellee and then the conclusion. So that's our procedure. If you're ready to roll, let's do it. So, appellant, go ahead. Thank you very much, Judge. I apologize, that's the cat. Well, may it please the court, Your Honors. Rule of law should never be suspended in the United States of America, even when a tragedy occurs. And specifically in the case at bar, the rule of accountability should never be relaxed, because if it is, there occurs a violation of due process of law. Now, in my time before this court, I will make all three arguments that I made in my appellant brief, but I will not obviously address every single case, but we'll focus on the main arguments of each issue presented before the court. Specifically, the first issue regards the trial court erring in finding Mr. Marquis-Doherty guilty beyond a reasonable doubt, as he was charged and convicted of two counts of first degree murder by the theory of accountability. This is a direct appeal from the judgment from Judge Vincent Ghosn in a bench trial where Mr. Marquis-Doherty, again, was found guilty by the theory of accountability and was sentenced subsequently to 29 years in the Illinois Department of Corrections. The first issue... I apologize, judges. The first issue before this court is whether the trial court erred in finding Mr. Marquis-Doherty guilty beyond a reasonable doubt by the theory of accountability, where the evidence presented before the court at bench trial was so woefully insufficient that no reasonable trier of fact could have concluded that Mr. Marquis-Doherty was in fact guilty by the theory of accountability. Now, as I stated in my opening, the theory of accountability is one that is clear and it's very specific in order to find someone guilty. It is quite different than what one would need in order to find a defendant guilty by actually being the offender himself. And as this court is well aware, in order to find a defendant guilty by the theory of accountability, as Mr. Marquis-Doherty was charged in this case, a person would only be legally accountable for the conduct of another when, either before or during the commission of the offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense. The issue we have before the court is that no evidence that was proper or corroborated or sufficient was presented to the trial court in order for the trial court to find Mr. Doherty is guilty beyond a reasonable doubt. In the case at bar, there was evidence presented at trial that Mr. Marquis-Doherty was driving around in a vehicle with three friends. And at some point, they appeared at a currency exchange. And one of the passengers of the vehicle, Ronald McCormick, who testified at trial, indicated that one of the passengers in the front seat, either Mr. Doherty's or Mr. Jones received a phone call. At that point, he said that the word truck was said. And then at some point subsequently that the words there it go were said. Now, there was no evidence in the record corroborating this phone call. There were no phone records submitted to the court. There were no length of phone calls. And the only evidence of a phone call was from the passenger in the vehicle, Ronald McCormick, who said a phone call did occur. But there was inconsistent testimony as to where the phone call came from, if the phone call actually occurred, who received it, and what was said. But the only thing he said was said by either Mr. Jones, who was the actual shooter in this case, or by Mr. Doherty's, was truck. At a later point, the words there it go were said. Again, it's unclear whether this was part of a phone call, who the phone call was with, or how it would direct anyone to get to a place. But at that point, there is evidence that once the vehicle driven by Mr. Doherty's pulls up to the location at the currency exchange, the passenger, Mr. Jones, gets out of the vehicle and begins a shootout, essentially, with the deceased, with Mr. Stogner. Mr. Stogner then dies from his injuries. Mr. Doherty's drives away, with Mr. McCormick still in the vehicle. Now, again, for the theory of accountability to hold, there needs to be a common design or something further other than just mere presence at the scene. What we have in this case, Your Honors, is simply not sufficient. I liken this case specifically to People v. Johnson, which is 2021, Illinois, at 1-17-1885. The defendant was found guilty under the same theory of accountability, where he drove a vehicle where the principal, or the defendant who actually committed the offense, shot out of the car at the victims. This case specifically, Johnson was reversed, the finding in Johnson was reversed, as the appellate court found that the state's evidence was so unsatisfactory as to justify a reasonable doubt of the defendant's guilt, as a conviction based on speculation fell below the boundary that protected all citizens from losing their freedom except for proof beyond a reasonable doubt. This case is almost identical. The difference lies in the fact that there actually was more evidence in People v. Johnson than there is in Doherty's. Specifically, in the Johnson case, there was evidence of several phone calls that had been submitted to the court. There were evidence of phone records, there was evidence of the length of the records and the phone numbers that the calls came between. The state used that in Johnson to prove, or to attempt to prove, that there was a common design and that the defendant charged with accountability knew what was going on aided, abetted, assisted in the commission of the crime. In the case before this court, there are no such facts that have been presented. The record is entirely absent of phone records, and the remainder is, again, completely reliant on pure speculation as to what the words said, the four words, truck and there it go, actually meant, referred to, if they were directives, or who they came from, if there was even a phone call. So, I would submit to this court, as stated in my brief, that that is of utmost importance. Again, based on pure speculation of what four words meant, based on an uncorroborated phone call, there simply is patently insufficient evidence for proof beyond a reasonable doubt in this case to find Mr. Doherty guilty of first-degree murder. The mere presence of a defendant at a crime is not sufficient to find guilt beyond a reasonable doubt. Flight from the scene of a crime is not sufficient to prove guilt beyond a reasonable doubt. Even being the driver of the vehicle is not proof beyond a reasonable doubt that a defendant can be found guilty by the theory of accountability for first-degree murder. How do you get around the Fernandez case? If Your Honor could direct me specifically to which portion of the Fernandez case is distinguishable. Well, it's just very clear. It says that common design, in which there's evidence there is in this case, and it kind of blots out your argument. I would submit to the court that there is no evidence of a common design in this case. Again, simply being in the vehicle, there was no evidence throughout the record that Mr. Doherty was aware that there was even a firearm in his vehicle. There was no evidence of any conversations between Mr. Doherty and Mr. Jones, who was the shooter, that were submitted to the court by Mr. McCormick, who was the other passenger in the vehicle, to state that either person knew where they were going, what they were doing. Again, there's no evidence that Mr. Doherty had any clue that Mr. Jones even had a firearm inside the vehicle. Simply stating the words truck and there it go, again, by inconsistent testimony. Excuse me. The problem that you have is the standard of review that we have on this case. We're not looking at this at the first instance. We're looking at this case to determine whether or not it's sufficient. In this case where the jury heard the testimony and they determined that the words that were made and the actions as well, it wasn't just the words, it was the actions such as parking the truck, immediately blocking their way. They found that that evidence was sufficient. Now, we can't go against that, can we, unless we look at it in the light most favorable and say that it's not correct. That is correct. That's correct, Your Honor. This case was not in front of a jury, however. It was a bench trial in front of Judge Vincent Gunn. A jury was waived, so this was not a finding by a jury. It was by the trial court. And again, I would liken it specifically back to Johnson. I'm going to interrupt you with respect to Johnson, which I call the phone call case. This is beyond the phone call case. I mean, what if we had no phone calls, but we instead have all the other evidence that's captured on a video? We have evidence of the defendant driving the car, blocking the individuals who come out of the currency exchange, driving toward one of the injured individuals, injuring a leg, leaving the scene, not calling the police. What are we to do with all the remainder of that evidence, even absent the phone call issue? I would submit to this court, absent the phone call issue, that again, the remaining flight from a scene, not calling the police and driving toward one of the individuals and striking them on the leg. Which happened after Mr. Doherty's attempted to leave the scene. It was after Mr. Jones got out of the vehicle that one of the people was allegedly struck in the leg. There were no medical records given at trial that he was struck in any significant way. It appears from the video that the vehicle pulled up to a scene, again, pulled up to a space. There were people in front of the vehicle. The vehicle stopped and the passenger of the vehicle got out of the car and started shooting with one of the other people present at the location. They exchanged gunfire at that point. The issue that I would like to respond to for that judge, for all three judges actually, specifically relates to, again, the presence at the scene, driving to a scene, leaving a scene and not calling the police. None of those are sufficient to corroborate proof beyond a reasonable doubt for sufficiency of the evidence. In order to, again, overturn a courts or a finder effect, in this case, it was the trial court. The requirement is that the lower court based their judgment on something that was so doubtful, improbable or unsatisfactory as far as the evidence. The evidence was insufficient. That's what we're saying in our argument. The only evidence that Judge Gahn appeared to base his entire finding of guilty for Mr. Doherty's was he said that the turning point was that there was a phone call made. So I don't know that it is appropriate to disregard the phone call because that is the reason. The main reason Judge Gahn specifically indicated was the turning point. He said they would have just been driving around aimlessly. That appeared to be why they were all in the car. They were smoking cannabis, driving around. And at some point, a phone call is brought up, comes in, and that brings them all to the scene that without this phone call, Judge Gahn said none of this would have occurred. No harm would have come to anyone. It's not appropriate necessarily to completely disregard this phone call. I don't think I was disregarding the phone call, counsel. My position or my hypothetical was what if we didn't have the phone call, but we had all the other evidence? And are we to simply look at each piece of evidence individually or can we look at it cumulatively? Judge, I believe you can look at it cumulatively, but even with it being a cumulative regard, even looking at the totality of the circumstances, there's not enough for proof beyond a reasonable doubt to show that Mr. Doherty, again, did anything to have knowledge or intent that before or during the commission of this act by Mr. Jones, the shooting, that he had the intent to promote or facilitate that commission or that he solicited, aided, abetted, agreed, or attempted to even do any of those things for Mr. Jones. The record is completely devoid of any of those things. Again, simply driving away is not evidence that Mr. Doherty's had any knowledge either before or during the commission of the offense, which, again, has to be with the intent to promote or facilitate it. And the record is completely devoid of that. The evidence could have been that Mr. Doherty's drove away because he was terrified. He didn't know what his passenger was going to do. And so as soon as this passenger gets out of the vehicle armed with a firearm and starts shooting, he tries to drive away. The fact remains that there is no evidence substantiated in the record whatsoever or at trial to indicate that there was anything other than Mr. Doherty's presence at the scene. There was nothing to show any sort of meeting of the minds between Mr. Doherty's and Mr. Jones who fired the firearm. And there was simply amply not enough. There were only, again, the four words stated to connect Mr. Doherty's to anything that occurred by Mr. Jones's hand. There was no evidence, again, that anyone even knew Mr. Jones was armed with a firearm before he got out of the vehicle. Judge, the, again, just to make the distinction, none of the, I would just base, again, all of my, the cases cited in my opening brief would indicate that mere presence alone. And that would be people versus Dennis, specifically, 181 Illinois 2nd 87. To be legally accountable, the driver must knowingly drive a getaway car. They can't just drive a car away. They have to know that the car is specifically there to get away from a scene. Later, you know, Dennis says the same. I think you move on to your next issue. Thank you, Judge. Why don't you move on to your next issue? Appreciate it. The 2nd issue is whether or not the trial court violated Mr. Doherty's right to 6th Amendment right to a council of choice. Now, prior to trial that ended up being a bench trial before Judge Don, Mr. Doherty's was represented by private counsel early on and then was represented by attorneys from the office of the public defender. At some point, Mr. Doherty's did indicate that he wished to have a private attorney, Jeffrey Erdogan, represent him. That was presented to Judge Don. Judge Erdogan attempted to file an appearance and at that point was denied. He attempted a second point and was also denied by Judge Don. The trial court stated the reasons for the denial were specifically because of the length of time it would take for Mr. Erdogan to get caught up on the case and to bring the matter to trial, which was a relatively short period of 6 months because of the cost to the taxpayers. And as this court is aware, again, the cost to the tax, Mr. Judge Don also indicated that the public defender representing Mr. Doherty's was an excellent attorney and made note that he was being represented by sufficient counsel. And both of those things are problematic because the Sixth Amendment right to counsel of choice is not to be disturbed or abused. So, absent some kind of specific, a specific delay. Correct, Judge. If it's an attempt to delay, embarrass by the defendant specifically, rather than any indication that it is just the counsel of choice that defendant is seeking. Judge Don had a duty to look into the background on this and he did not appear to do it. He did not at all. The only things again that Judge Don looked at appeared to be the cost to the taxpayers of keeping Mr. Doherty in custody for the 6 month period or even 3 month period. I believe Mr. Erdogan indicated finally that he would be able to reduce the amount of time to. The court indicated that it would be $27,000 to hold Mr. Doherty's in custody that long to the taxpayers and he wasn't willing to do it. But he did not look at any of the other instances as to why he'd made no inquiries as to the reasons Mr. Doherty's was seeking the counsel of his choice. Which again, is something that's not to be disturbed. So, absent an abuse such as again, as your Honor indicated, an attempt to delay or embarrass the effective administration of justice. So, in evaluating the court's discretion in this regard, the diligence of the move-ins, which would be Mr. Doherty's in this case, and the right of Mr. Doherty's right to a speedy trial, and a fair and impartial trial in the interest of justice, all would come into play. But again, Judge Gahn made no inquiries whatsoever as to the reasons. And a determination needs to be based specifically on the facts of each case. Judge Gahn made no inquiries, ignored all of that, and instead chose to indicate that he believed that Mr. Doherty's was already being represented by adequate counsel. Which, as this court is aware, is not an appropriate basis to deny someone their counsel of choice. And further, that's it. That's it. Counsel, there was an informal meeting between the substitute counsel and the court some 14 days prior to him following the motion, seeking an appearance. What was the nature of that informal meeting? With Mr. Doherty's and Mr. Erdogan? With Mr. Erdogan and the court. The record indicates that there was an informal meeting between the court. What was the nature of that meeting? The nature of that meeting appeared to be where Mr. Erdogan informed the court that he intended to put on the record that he was attempting again to file an appearance because he had attempted once already and was denied. The family of Mr. Doherty's was hopeful that if he asked again or made another motion to the court. So it's my understanding that that was a conversation to put Judge Gahn on notice that he did want to make another motion to file an appearance before the court without surprising Judge Gahn or making him unaware of the instances of the case. So it's simply to make the record. Correct. And again, without any sort of indications from Judge Gahn about any review of the specific facts of the case, he made no inquiries of Mr. Doherty's. He made no inquiries of the public defenders at the time. He made no inquiries of Mr. Erdogan of the specific facts under which they were requesting. They did not request a lengthy period of time in order to bring the matter to trial. The six month period again that Mr. Erdogan initially requested, he reduced down to three. The amount of time that the public defenders actually ended up taking to bring the matter to trial ended up being a discrepancy of one to two months. So with all of that, there was just simply not sufficient evidence to show that Judge Gahn relied on any reasonable facts or circumstances. And thus, we argue that he abused his discretion in disallowing Mr. Doherty's to have the attorney of his choice file an appearance. Any questions? I have none. We'll let Sharon go ahead then. Sharon? Yes. May it please the court, Assistant State's Attorney Sharon Kim, on behalf of the people of the state of Illinois. We ask this court to affirm defendant's conviction because people proved the defendant guilty of first degree murder because he was accountable for the shootings committed by Kashia Jones. Defendant drove Mr. Jones to the currency exchange where the victim, Dietrich Sogner, and his friends, Brant Davis and Gerald Williams, were located. Defendant did this knowing Jones intended to shoot the victim. Additionally, defendant drove his car into Brant Davis as he was trying to escape the shooting. In this case, the evidence makes it abundantly clear that defendant and Jones participated in a common plan to commit the shooting. Defendant was driving co-defendant, Kashia Jones, as well as Ronald McCormick and Rashaun Scott, without any other purpose than to drive around and smoke when he received a phone call while he was driving. Directly after the phone call, defendant drove the group to the currency exchange by the Dan Ryan and 55th, where he saw Davis's gray Audi in the parking lot and said the words, there it go. This shows that the phone call directly directed defendant to that specific location. Furthermore, defendant was accountable because of his presence in the car during the commission of the shootings. In addition to this, after the shootings had begun, Davis was trying to run away from Jones and defendant drove forward, striking him in the leg with his car. Defendant's conduct in continuing to drive into one of the victims, whether it was to thwart his retreat or whether it was to directly harm him, demonstrates that he shared Jones's intent and was actively participating in the commission of the crime. Defendant was also accountable because of his failure to report the incident and because he fled from the scene. After the shooting, defendant did nothing to offer Davis aid and instead drove off the Dan Ryan Expressway, stopping only briefly to let Ronald McCormick out of the car. Therefore, it's clear from the order of events, both before and after the shooting, that defendant and Jones both had a plan to go to the currency exchange and commit the shootings. Defendant argues that the phone call is not sufficient to show that defendant had a common design as Jones. However, when all of the events are taken as a whole, the evidence is clear that defendant did in fact share a common design. The case involved proof of defendant's conduct before and again after the phone call. So before receiving the phone call, defendant was aimlessly driving around for about 30 to 40 minutes. And then after the phone call, defendant drove to the currency exchange, said, there it go, referring to a parked Audi, circled the lot, and then stopped the car directly in front of the victims as they were leaving the currency exchange. The clear inference from this evidence is that the phone call directed defendant to where he needed to go so that Jones could shoot Dietrich Stockner. Furthermore, this case is distinguishable from People v. Johnson because in Johnson, the only evidence regarding the phone calls between the co-defendants and the defendant were the phone records. And the phone records only indicated the length and number of phone calls that were made. Furthermore, in Johnson, it was not proved that that phone number even belonged to the defendant. In the instant case, however, Ronald McCormick was in the car when the phone call was made, and he testified to the contents of the phone call, which he overheard. Based on these facts, defendant is unable to establish that no rational trier of fact could have found him accountable. As a result, we ask that defendant's conviction and sentence be affirmed because the people proved beyond a reasonable doubt that defendant was accountable for the first degree murder of Dietrich Stockner. I'll move on to my next point. Secondly, the trial court did not abuse its discretion when it denied defendants privately retained counsel Jeffrey Erdagan's motion to file an appearance. At this point, the court had anticipated picking a trial date to two previous times before attorney Erdagan filed his motion to appear. Attorney Erdagan indicated that at that point, he would need another six months before he would be ready for trial. In light of these facts, the trial court properly denied his leave to file an appearance. While the Sixth Amendment encompasses a right to choose counsel, that right is not absolute, and the trial court has wide latitude in balancing the right of counsel of choice against the needs of fairness. Looking to the factors that courts consider, such as the interest of justice and the right of the defendant to a speedy and fair trial, those factors weigh in favor of the trial court's decision in this case. First, defendant's case had been on the docket for over a year and had already been set for trial two times, but defendant's counsel indicated that more time was needed. Furthermore, defendant's first privately retained attorney had withdrawn in 2017. The case was then continued motion defended several times before defendant was assigned to a second attorney, public defender, Edward Posipofsky. After that second continuance to pick a trial date, private counsel Jeffrey Erdagan sought leave to file an appearance, which would have caused further delay in the proceedings and would have threatened the administration of justice because he would have needed an additional six more months at that point already. Furthermore, at that point, Edward Posipofsky, the public defender on defendant's case, had already been working on defendant's case for eight months. Other factors to consider include whether the defendant articulated an acceptable reason for desiring new counsel. The record does not establish that defendant had expressed to the court why he wanted a new attorney. Defendant also did not inform the trial court of his efforts to obtain new counsel or express any conflict or complications with his public defender. In light of these facts, the trial court probably properly found that defendant's request to obtain new counsel at this late stage was a delay tactic. In their brief, defendant cites to People v. Green to support his claim that the trial court should have asked defendant why he wanted Erdagan to represent him since it was, quote, a simple matter to do so. However, defendant in that case was forced to go to trial that same day with a public defender when he asked the court for a short continuance because his attorney was out of town. Therefore, Green is wholly distinguishable in this case where defendant, in this case, was given three months to prepare for trial. Defendant in their brief also cites to People v. Payne stating that in Payne, the Illinois Supreme Court remanded the case because not all the continuances were by defendant's motion. However, in Payne, the defendant had only asked for one continuance, and in this case, defendant had asked for eight. Furthermore, in Payne, the defendant was coerced into going to trial because the trial court threatened to increase his bond by ten times the original amount unless he was willing to go to trial that same day. Therefore, where the defendant's case was set for trial, defendant's attorney was ready to proceed in three months, and where defendant had already changed lawyers previously, and where defendant did not provide the court with any basis for a substitution of counsel, it cannot be said that the trial court abused his discretion in denying the request for a substitute counsel. Any questions? Any questions? Yes. In this case, what about the factors you just mentioned? In this case, the judge did not even inquire with the defendant as to why he wanted a new lawyer. I mean, there's nothing, you know, the defendant didn't say anything while the judge is doing all the talking. He's saying, I'm not going to let this new lawyer come in, and he did not even inquire with the defendant as to why he wanted a different attorney. Isn't that kind of like in violation of every case that we've had here, you have to at least make an inquiry? The fact that the trial court didn't make an inquiry is not overly problematic because the colloquy that took place was pretty expansive, and during that time, defendant had plenty of opportunity to make his case, and he did, in fact, say one sentence to the trial court at the end. And if he was willing to make that statement, he kind of also included why he wanted a new counsel, but he didn't, during all of that time, he didn't express to the trial court why he wanted a new counsel. He didn't express to the trial court if he had been trying to obtain a new counsel. He had one there. He had one there ready to file an appearance. Obviously, he was successful in his efforts to retain counsel. Yes, that is true, but he didn't express why. He didn't express to the trial court the reasons behind his request. Well, Ms. Kim, why would he – I'm a little perplexed about what defense counsel or counsel who was attempting to file an appearance didn't say. When it appears that Judge Gahn's only focus was on the cost that it would incur to retain or keep the defendant incarcerated, there was no other discussion other than the cost of the delay, $27,000, I believe it was. That was the only focus. That was his focus, was the efficient administration of justice. Is that the proper focus in a case such as this, where a defendant is asking to be represented by counsel of his or her choice? It is one of the factors that are balanced against the fairness of the trial is the efficient administration of justice, and it is within his discretion to find – So, let's think about how many months there were in between the date that Judge Gahn set to set a trial date, not to proceed to trial. So, counsel comes in and seeks to file an appearance in January. When does the case actually go to trial? I believe it goes to trial in May. How many months is that? That's five months. Five months. Counsel was saying, I need six. What would have been the huge delay? Well, the delay would be unknown because it's unclear whether O'Dagon also would have required more months to prepare or whether there was – That's not part of the record. O'Dagon said, I need six months. He didn't say, I'm going to need six months and then maybe. Right. Neither did the public defender at that point. I guess it's hard to say – Well, since you bring up the public defender, didn't the public defender point out to Judge Gahn that he thought there might be a problem with not allowing – Right. He did. He did. That's up to the trial court discretion to make that determination. Any further questions? I have none. No. Okay, Heather, you may proceed. Thank you, Judge. I would use my remaining time to briefly address the issue of the errors in sentencing that Judge Gahn did additionally abuse his discretion in sentencing. That even though the sentence that was given to Mr. Daugherty's at 29 years in the Illinois Department of Corrections is technically within the statutory range of 20 to 60, since Mr. Daugherty's was not the person who personally discharged the firearm, given the incredible mitigating evidence that was presented during sentencing, as well as the insufficiency or what we claim to be the insufficiency of evidence presented at trial to find Mr. Daugherty's guilty by accountability beyond a reasonable doubt. The trial court does not have unbridled rule to indicate any sentence he prefers, and a sentence 10 years over the minimum in a case with evidence that is so circumstantial and so speculative we believe was a clear abuse of discretion. To finalize any further points, again, the prosecution's distinction or attempted distinction between this case and Johnson is not appropriate. Again, the phone call records that were presented in Johnson were at least evidence that phone calls were had between potentially the defendant and potentially someone leading them to a crime or causing a common design or criminal design. Again, in this case, mere presence is not enough. Leaving a scene is not enough. Not calling the police is not enough. There needs to be evidence specifically to indicate that with the intent to promote or facilitate the commission of this crime, that the defendant, in this case, Mr. Daugherty, did something to, again, aid, abet, or promote, or facilitate. And he had to have the intent to do that. And there was simply and amply nothing to show any of that except for four words, which, again, I would like to point out to this court were inconsistent by Mr. McCormick, who was in the vehicle. On cross-examination and direct examination, he had inconsistent statements as to who received a phone call, if it was Mr. Jones or Mr. Daugherty's, and who then said the words truck, who said the words there it go. And there was no evidence, again, except for speculation as to what any of those words specifically referred to. So I think with those vague terms, with no corroborating evidence of the phone calls, and with the speculative nature of anything else remaining, there was simply nothing to tie Mr. Daugherty's to the intent to promote or facilitate or abet any criminal design with Mr. Jones, who was actually the shooter. I would stand on my previous arguments for the argument as to the denial of Mr. Daugherty's right to counsel of choice. Any questions? No. No. All right. Thank you both very much. You both were very well prepared. You were both kind of interesting. And Heather had a cheerleader in the background. I apologize, Soma. I tried to make sure you were in the room. I'm sorry, judges. You're not the only one. I have my dog, Rocky, is right here. But if I'd held him up, he would have been barking. Anyway, both of you did a nice job. And I thank you very much for your time.